UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAUL ANDREW LEITNER-WISE,<br><br>    Plaintiff,<br><br>  v.<br><br>ROBERT BERNARD IREDALE CLARK, *et al.*,<br><br>    Defendants. | Civil Action No. 18-771 (BAH)<br><br>Chief Judge Beryl A. Howell |

## **MEMORANDUM OPINION**

  The plaintiff, Paul Andrew Leitner-Wise, invents firearm technology. Two of the plaintiff's inventions, however, allegedly have been wrongly identified as the work of a fellow-inventor, defendant Robert Bernard Iredale Clark. According to the plaintiff, Clark conspired with a second defendant, Eugene L. Flanagan III, a patent attorney, to apply for patents that misattributed the plaintiff's inventions to Clark. That misattribution, the plaintiff alleges, freed defendant Southern Gun Company, Ltd. ("Southern Gun")—Clark's company—to use the patented technology in its products without the plaintiff's consent and without compensating the plaintiff. The plaintiff claims that the conduct of these three defendants gives rise to several common-law claims and requires correcting the named inventor on two patents.

  The merits of the plaintiff's allegations will be for another court to decide. None of the defendants—Clark, Flanagan, or Southern Gun— and none of the alleged misconduct, is connected to the District of Columbia. Thus, Flanagan's Mot. Dismiss Am. Compl. ("Flanagan Mot. Dismiss"), ECF No. 18, and Clark & Southern Gun's Mot. Dismiss Am. Compl. & Mot.

1

Summ. J. ("Joint Mot. Dismiss"), ECF No. 19, are granted as this Court cannot exercise personal jurisdiction over any defendant.[1]

## I. BACKGROUND

By the plaintiff's account, he is "a prolific inventor in the field of small arms design." Am. Compl. ¶ 30, ECF No. 16. The multitude of patents listing the plaintiff as an inventor substantiate that claim. *Id.* ¶ 31. This case, in which the pertinent events "largely occurred in Cornwall, United Kingdom, Westminster, Maryland, and Alexandria, Virginia," *id.* ¶ 13, pertains to two such patents: (1) U.S. Patent No. 7,735,410 (issued on June 15, 2010) (" '410 Patent ") and (2) U.S. Patent No. 8,997,622 (issued on Apr. 7, 2015) (" '622 Patent "), *id.* ¶ 2.

Since at least 2004, the plaintiff, who is a citizen of the United Kingdom and a resident of the District of Columbia, Am. Compl. ¶¶ 7, 18, has been developing "a firearm bolt assembly with a fully-supported bolt face," *id.* ¶ 35. In 2005, Clark, who, like the plaintiff, is a citizen of the United Kingdom, *id.* ¶¶ 8, 19, was "contracted to manufacture parts for prototype bolts," *id.* ¶ 39. On October 20, 2006, an application to patent a "Firearm Bolt Assembly with Fully-Supported Bolt Face" was submitted to the United States Patent and Trademark Office ("USPTO"). *Id.* ¶ 41; *see also* U.S. Patent Application No. 11/583,784 (filed Oct. 20, 2006) (" '784 Application "). The application listed the plaintiff, Clark, and a third-party as the three inventors, *see* '784 Application, but was abandoned prior to the award of any patent, Am. Compl. ¶¶ 42, 56.

In 2008, the plaintiff was looking for a new patent attorney, and was introduced to Flanagan, a Connecticut resident. *Id.* ¶¶ 9, 43–44. Unbeknownst to the plaintiff, Flanagan also was working with Clark on a separate patent application. *Id.* ¶ 45–48. On February 23, 2009,

---

[1] Clark and Southern Gun moved, in the alternative, for summary judgment. *See* Joint Mot. Dismiss. Given that those defendants' motion to dismiss is granted, consideration of the alternative motion is unnecessary.

Flanagan helped Clark apply to patent a "Firearm Bolt." *Id.* ¶¶ 45–48, 61–62; *see also* U.S. Patent Application No. 12/390,839 (filed Feb. 23, 2009) (" '839 Application "). The '839 Application was a divisional application of the '784 Application, which, according to the plaintiff, means that the '839 Application did "not include any subject matter" that was not "derived from and fully supported by [the '784 Application]." Am. Compl. ¶¶ 56–58; *see also* '839 Application (stating that the '839 Application is "[d]ivision of application No. 11/583,784, filed on Oct. 20, 2006, now abandoned"). Although the plaintiff concedes that the '784 Application was eventually abandoned, the plaintiff alleges that the '839 Application was "filed prior to the abandonment, thereby establishing proper continuity with [the '784 Application]." Am. Compl. ¶ 56. Nevertheless, the '839 Application listed Clark as the sole inventor, a consequence, the plaintiff claims, of a conspiracy between Clark and Flanagan to avoid regulations applicable to firearm technology invented in the United States. *Id.* ¶¶ 36–37, 59–60; *see also* '839 Application. Based on the '839 Application, Clark was awarded, on June 15, 2010, the '410 Patent for a "Firearm Bolt." Am. Compl. ¶ 57; *see also* '410 Patent. Clark, the plaintiff alleges, had contractual arrangements to license that patented technology. Am. Compl. ¶ 64. The plaintiff first learned of the '839 Application and resulting '410 Patent in 2016. *Id.* ¶¶ 49, 66–67.

Meanwhile, Flanagan was preparing a separate patent application for a "Gas Operating Systems, Subsystems, Components and Process." *Id.* ¶¶ 51–54; *see also* U.S. Patent Application No. 12/694,061 (filed Jan. 26, 2010) (" '061 Application "). The claimed inventions were revisions to technology that the plaintiff had previously patented. Am. Compl. ¶¶ 34, 38; *see also* U.S. Patent No. 7,461,581 (issued Dec. 9, 2008) (patenting the plaintiff's invention of a "Self-Cleaning Gas Operating System for a Firearm"). Flanagan filed the new application with

3

the U.S. Patent Office on January 26, 2010.  Am. Compl. ¶¶ 51, 54; *see also* '061 Application. The '061 Application named the plaintiff and Clark as co-inventors.  Am. Compl. ¶¶ 52–53; *see also* '061 Application.  While the '061 Application was pending, Flanagan filed, on May 4, 2013, a divisional application.  Am. Compl. ¶¶ 71, 74; *see also* U.S. Patent Application No. 13/887,295 (filed May 4, 2013) (" '295 Application ") (stating that the application is a "[d]ivision of application No. 12/694,061").  The '295 Application also named the plaintiff and Clark as co-inventors.  Am. Compl. ¶¶ 72–73; *see also* '295 Application.  Based on the two applications, U.S. Patent No. 8,443,711 (" '711 Patent ") was issued on May 21, 2013 and the '622 Patent was issued on April 7, 2015.  Am. Compl. ¶ 87; *see also* '711 Patent; '622 Patent. Each patent listed the plaintiff and Clark as co-inventors and non-party Leitner-Wise Defense, Inc. ("LWDI") as the assignee.  Am. Compl. ¶ 75; *see also* '711 Patent; '622 Patent.  The plaintiff claims to have invented the only elements that the '622 Patent covers, and that, notwithstanding the plaintiff's involvement, Clark and Flanagan later conspired to deprive the plaintiff of the '622 Patent by submitting an application to remove the plaintiff as a named inventor.  Am. Compl. ¶¶ 80–85, 87.  Again, the object of the conspiracy was circumventing regulations applicable to firearm technology developed in the United States and to deprive the plaintiff of the benefit of his inventions.  *Id.* ¶ 80–81.  Moreover, the plaintiff alleges that although LWDI was designated as the assignee for the '622 Patent, LWDI ended operations in 2010.  *Id.* ¶¶ 12, 76.  Finally, the plaintiff claims that he was ignorant of the '622 Patent until 2017.  *Id.* ¶¶ 78–79, 86.

Historically, "[t]he Defendants have conducted business in the District of Columbia through [LWDI], including solicitation of sales of rifles to United States Government agencies including the United States Army and the Pentagon Force Protection Agency."  *Id.* ¶¶ 29.  The

4

plaintiff provides no details about when these alleged transactions happened. Now, according to the plaintiff, Southern Gun, a British company owned by Clark, *id*. ¶¶ 10, 33, "uses" the technology claimed in each of the '410 and '622 Patent without the plaintiff's consent and without compensating the plaintiff, *id*. ¶¶ 88–91. Moreover, "the Defendants," through LWDI, have sold firearms containing the '622 Patent's technology, to the Pentagon Force Protection Agency and Presidential Airways, *id*. ¶¶ 92–93[2], and Clark and Southern Gun "have subsequently conveyed the technology described in the '622 and '410 Patents to foreign government entities without permission of the United States Government," *id*. ¶ 94.

Based on the foregoing allegations—all of which are accepted as true at this stage—the plaintiff instituted this action on April 4, 2018. *See* Compl., ECF No. 1. After the defendants filed motions to dismiss, *see* Clark & Southern Gun's Mot. Dismiss, ECF No. 12; Flanagan's Mot. Dismiss, ECF No. 15, the plaintiff amended his complaint, *see* Am. Compl.[3] In the Amended Complaint, the plaintiff brought claims, under 35 U.S.C. § 256, seeking to correct the named inventors on the '410 and '622 Patents, *see* Am. Compl. ¶¶ 95–110; a claim, under 35 U.S.C. § 281, alleging patent infringement, *see id*. ¶¶ 111–118; and common-law claims for unjust enrichment, civil conspiracy, misappropriation of intellectual property, conversion, breach of fiduciary duty, tortious interference with business expectancy, and legal malpractice, *see id*. ¶¶ 119–155. The defendants subsequently renewed their motions to dismiss, seeking dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), for lack of

---

[2]     The Amended Complaint alleges that LWDI, which "ceased to exist in 2010," Am. Compl. ¶ 76, sold technology covered by the '622 Patent, *see id*. ¶¶ 92–93. Yet, the '622 Patent was applied for in 2013 and issued in 2015. *See* '295 Application; '622 Patent. The plaintiff does not reconcile the inconsistency.
[3]     In light of the Amended Complaint, the Court denied the defendants' first motions to dismiss as moot. Min. Order (dated Oct. 11, 2018).

standing, lack of personal jurisdiction, and the plaintiff's failure to allege any plausible claim to relief, respectively. *See generally* Flanagan Mot. Dismiss; Joint Mot. Dismiss.

Those two motions to dismiss are now ready for resolution.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(2)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the plaintiff "must make a *prima facie* showing of the pertinent jurisdictional facts." *Livnat v. Palestinian Auth.*, 851 F.3d 45, 56–57 (D.C. Cir. 2017) (quoting *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988)). The *prima facie* showing requires specific factual allegations connecting the defendant to the forum. *First Chicago Int'l*, 836 F.2d at 1378–79. Conclusory statements and bare allegations are insufficient. *Livnat*, 851 F.3d at 57. Unlike a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharms., Inc. v. FDA,* 402 F.3d 1249, 1253 (D.C. Cir. 2005). Indeed, jurisdictional arguments may be premised on the "pleadings, bolstered by such affidavits and other written materials as [the parties] can otherwise obtain." *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005). "When deciding personal jurisdiction without an evidentiary hearing—as here—the 'court must resolve factual disputes in favor of the plaintiff.'" *Livnat*, 851 F.3d at 57 (quoting *Helmer v. Doletskaya*, 393 F.3d 201, 209 (D.C. Cir. 2004)). The Court, however, "'need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts.'" *Id.* (quoting *Helmer*, 393 F.3d at 209).

6

**III.    DISCUSSION**

Although the defendants seek dismissal of the Amended Complaint on three separate grounds—personal jurisdiction, standing, and failure to state a claim on which relief can be granted—this opinion considers just personal jurisdiction because the defendants' success on that basis is sufficient to resolve the pending motions. While the parties do not raise the prospect of transferring the case, the Court then addresses whether a transfer, rather than dismissal without prejudice, is proper.

**A.    Does This Court Have Personal Jurisdiction over Any Defendant?**

A federal court's "personal jurisdiction over nonresident defendants depends upon state law." *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509 (D.C. Cir. 2002). In this Court, District of Columbia law, subject to the constraints of constitutional due process, supplies the applicable rules. *Id.* The District of Columbia Code establishes several bases for exercising jurisdiction over a nonresident, only one of which might confer jurisdiction here. Under the District of Columbia's long-arm statute, this Court may exercise specific personal jurisdiction "over a person, who acts directly or by an agent, as to a claim for relief arising from the person's transacting any business in the District of Columbia." D.C. Code. § 13-423(a)(1). Jurisdiction predicated on § 13-423 extends only to "a claim for relief arising from" the acts permitting jurisdiction. *Id.* § 13-423(b). As for the constitutional constraint on personal jurisdiction, the "transacting any business" language "generally has been interpreted to be coextensive with the Constitution's due process requirements" meaning that in effect the statutory and constitutional requirements "merge into a single inquiry." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).

No defendant in this case resides in the District of Columbia. *See* Am. Compl. ¶¶ 8–10. Moreover, the plaintiff's allegations relate to events that "largely occurred in Cornwall, United Kingdom, Westminster, Maryland, and Alexandria, Virginia." *Id.* ¶ 13. Indeed, the Amended Complaint's sole reference to business transacted in the District of Columbia is that the defendants, through non-party LWDI, solicited rifle sales to federal agencies, including the United States Army and the Pentagon Force Protection Agency, which rifles incorporated technology belonging to the plaintiff. *Id.* ¶¶ 29, 92–93. As a result, each defendant has challenged this Court's personal jurisdiction, arguing that the Amended Complaint has not made a *prima facie* showing of sufficient contact with the District of Columbia. The defendants' arguments are taken in turn.

        1.    *Southern Gun*

To begin, Southern Gun maintains that the Amended Complaint has not alleged facts showing either that Southern Gun transacted business in the District of Columbia, *see* Clark & Southern Gun's Mem. Supp. Mot. Dismiss Am. Compl. ("Joint Mem.") at 14–15, ECF No. 19-1, or that, if Southern Gun did transact business in the District of Columbia, the business was related to the plaintiff's claims, *id.* at 16. Each omission, according to Southern Gun, independently defeats this Court's personal jurisdiction.

As noted, the sole allegation in the plaintiff's Amended Complaint related to the District of Columbia is LWDI's rifle sales. *Id.* ¶¶ 29, 92–93. While LWDI is alleged to be a wholly-owned subsidiary of Southern Gun, *id.* ¶ 11, Southern Gun argues that business relationship, standing alone, is insufficient to impute LWDI's contacts with the District of Columbia to Southern Gun. Joint Mem. at 14–15. Sure enough, a subsidiary's forum contacts are not ordinarily attributed to the parent entity. *El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 675–

76 (D.C. Cir 1996), *abrogated on other grounds by Samantar v. Yousuf*, 560 U.S. 305 (2010). Exceptions apply "where affiliated parties are 'alter egos' of a corporation of which the Court has personal jurisdiction; in that case the corporation's contacts may be attributed to the affiliated party for jurisdictional purposes." *Diamond Chemical Co., Inc. v. Atofina Chemicals, Inc.*, 268 F. Supp. 2d 1, 7 (D.D.C. 2003) (quoting *Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 24 F. Supp. 2d 66, 70 (D.D.C. 1998)). "To determine whether the two corporations are not really separate entities, the court must determine whether the 'parent corporation so dominated the [subsidiary] corporation as to negate its separate personality, making the exercise of jurisdiction over the absent parent fair and equitable.'" *Crichlow v. Warner Music Grp. Corp.*, 565 F. Supp. 2d 1, 4 (D.D.C. 2008) (quoting *Atlantigas Corp. v. Nisource, Inc.,* 290 F.Supp.2d 34, 48 (D.D.C. 2003)).

This case, according to Southern Gun, fits the rule rather than the exception because "the amended complaint makes no factual allegation from which it can be reasonably inferred that Southern Gun was not separate from [LWDI], that Southern Gun dominated [LWDI], or that [LWDI] was somehow Southern Gun's agent." Joint Mem. at 15. Southern Gun accurately characterizes the Amended Complaint, which other than commenting that LWDI was "wholly owned by Defendant Southern Gun Company Ltd.," Am. Compl. ¶ 11, is devoid of any allegation about the two entities' relationship.

As Southern Gun underscores, the plaintiff's consolidated opposition to the motions to dismiss entirely neglects Southern Gun's argument. Clark & Southern Gun Reply Supp. Mot. Dismiss ("Joint Reply") at 2, ECF No. 23. Rather, the plaintiff's opposition focuses exclusively on an alleged civil conspiracy, through which Flanagan and Clark purportedly agreed to deprive the plaintiff of the benefit of his inventions. Pl.'s Opp'n Mot. Dismiss ("Pl.'s Opp'n") at 18–21,

9

ECF No. 21. Irrespective of whether the plaintiff has pleaded facts that establish a conspiracy permitting the exercise of personal jurisdiction over some defendants, neither the opposition nor the Amended Complaint suggests that Southern Gun, or anyone acting on behalf of Southern Gun, participated.

Without any factual allegation permitting the attribution of LWDI's contacts with the District of Columbia to Southern Gun, this Court cannot exercise personal jurisdiction over Southern Gun.[4]

### 2. *Clark*

Clark also challenges this Court's personal jurisdiction, contending that the "fiduciary shield" doctrine guards him from individual accountability for any actions taken through LWDI. Joint Mem. at 15. Indeed, "[t]he fiduciary shield doctrine counsels that '[p]ersonal jurisdiction over the employees or officers of a corporation in their individual capacities must be based on their personal contacts with the forum and not their acts and contacts carried out solely in a corporate capacity.'" *Nat'l Cmty. Reinv. Coal. v. NovaStar Fin., Inc.*, 604 F. Supp. 2d 26, 29 (D.D.C. 2009) (quoting *Bailey v. J&B Trucking Servs., Inc.*, 577 F. Supp. 2d 116, 118–19 (D.D.C. 2008)); *see also Flocco v. State Farm Mut. Auto. Ins. Co.*, 752 A.2d 147, 162 (D.C. 2000) ("[J]urisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him." (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984)).

To this argument too, the plaintiff's opposition gives no answer. Even if the plaintiff had answered, the allegations in the Amended Complaint do not support the exercise of jurisdiction over Clark. First, the Amended Complaint contains no allegation of Clark's relationship to

---

[4] Southern Gun's alternative argument—that any contacts are unrelated to the alleged misconduct—need not be considered.

LWDI, the only entity alleged to have transacted business in the District of Columbia. True, Clark owns Southern Gun, which in turns owns LWDI, but the Amended Complaint was devoid of allegations that justified imputing LWDI's actions to Southern Gun. *A fortiori*, the Amended Complaint does not bridge LWDI and Clark. Second, assuming the Amended Complaint had linked LWDI to Southern Gun and Southern Gun to Clark, the plaintiff still would need to overcome the fiduciary shield doctrine. While the fiduciary shield is ineffectual if, for example, the defendant is a high-ranking officer of the entity with forum contacts, *see Nat'l Cmty. Reinv. Coal.*, 604 F. Supp. 2d at 30; *see also Flocco*, 752 A.2d at 163 n.20 (declining "to adopt such an absolute 'fiduciary shield' doctrine"), the plaintiff here has not alleged any facts from which the corporate composition of LWDI or Southern Gun can be discerned. Without such allegations, the plaintiff has not made even a *prima facie* showing of a pertinent jurisdictional fact. Clark, thus, is beyond this Court's reach.

### 3. *Flanagan*

Finally, Flanagan argues that the Amended Complaint fails to connect him to the District of Columbia. Flanagan Mem. Supp. Mot. Dismiss ("Flanagan Mem.") at 15–18, ECF No. 18-3. Flanagan emphasizes that the only allegation addressed to conduct in the District of Columbia is unrelated to Flanagan, who has "never worked as an employee of [LWDI], … has never sold rifles to United States Government Agencies, has never sold firearms to or otherwise conducted business with the Pentagon Force Protection Agency, [and] has never sold firearms or otherwise conducted business with Presidential Airways … ." *Id.* at 17. Indeed, Flanagan attached an unrebutted declaration to his motion, which declaration can be considered on review of a Rule 12(b)(2) motion, attesting that he has never conducted business in the District of Columbia. Flanagan Mot. Dismiss, Flanagan Decl., Ex. 10, ¶¶ 2–6, ECF No. 18-4.

The plaintiff responds that irrespective of whether Flanagan directly transacted business in the District of Columbia, personal jurisdiction exists under the "conspiracy theory of personal jurisdiction." *See* Pl.'s Opp'n at 18–19 (citing *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 523 (D.C. Cir. 2001)). Under the conspiracy theory, one co-conspirator may be subject to this Court's personal jurisdiction based on the acts of a separate co-conspirator within the District of Columbia. *Second Amendment Found.*, 274 F.3d at 523 (noting that D.C. Code § 13-423(a)(1) permits jurisdiction over an individual who transacts business through an agent). To establish a civil conspiracy, through which the business of a co-conspirator can be imputed to another, a plaintiff must make a *prima facie* showing of: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Id.* at 524 (quoting *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983)). Here, too, "since the 'bare allegation of conspiracy or agency is insufficient to establish personal jurisdiction, a plaintiff must allege specific acts connecting [the] defendant with the forum.'" *Id.* (quoting *First Chicago Int'l*, 836 F. 2d at 1378); *see also Jungquist v. Sheikh Sultan bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C. Cir. 1997) ("[T]he plaintiff must plead with particularity the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy." (internal citations omitted)).

In this case, the plaintiff alleges that Flanagan and Clark conspired to deprive the plaintiff of technology claimed in the '410 and '622 Patents. Am. Compl. ¶¶ 59–60, 80–81. In furtherance of that conspiracy, Flanagan allegedly submitted the '839 Application, which became the '410 Patent, without the plaintiff's knowledge and later petitioned to remove the

plaintiff from the '622 Patent. *Id.* ¶¶ 61–62, 82. Flanagan's subversive efforts are evidence of Flanagan's conspiracy with Clark. Pl.'s Opp'n at 19–20.

Flanagan correctly responds that, even if there was a conspiracy, the Amended Complaint misses a critical link: an act of any co-conspirator taken in the District of Columbia. Flanagan Reply Supp. Mot. Dismiss ("Flanagan Reply") at 12, ECF No. 22. LWDI is not an alleged co-conspirator. Without any allegation of a co-conspirator transacting business in the District of Columbia, the conspiracy theory of personal jurisdiction does not aid the plaintiff.

One final point warrants discussion. In his opposition to the motions to dismiss, the plaintiff writes that "Clark would go on to sell rifles bearing these inventions in the District of Columbia and elsewhere without any benefit to the Plaintiff." Pl.'s Opp'n at 19. That contention appears only in the plaintiff's opposition brief. Although that contention ties Clark to the District of Columbia, and conceivably Flanagan if indeed the plaintiff had pleaded a conspiracy between Flanagan and Clark, a plaintiff cannot cure a complaint's defects by alleging new facts in a brief opposing a motion to dismiss. Indeed, "[i]t is axiomatic that a complaint may not be amended by briefs in opposition to a motion to dismiss." *Hawkins v. Wash. Met. Area Transit Authority*, 311 F. Supp. 3d 94, 109 (D.D.C. 2018) (quoting *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003)) (discussing brief filed in opposition to defendant's motion to dismiss under Rule 12(b)(6)). While a court presented with a jurisdictional question may peer beyond the face of the complaint, that leeway does not extend to assertions made in a party's brief that have no support in the party's pleadings or an attachment thereto. *Cf. Mwani*, 417 F.3d at 7 ("[T]o establish a prima facie case, plaintiffs … may rest their argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain."); *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610,

619 (1st Cir. 2001) ("[I]n evaluating whether the prima facie standard has been satisfied, the district court is not acting as a factfinder; rather, it accepts properly supported proffers of evidence by a plaintiff as true and makes its ruling as a matter of law." (internal quotations omitted)); *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992) ("[W]here necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1351 (3d ed. 2004 & Supp. 2018) (on review of a Rule 12(b)(2) motion, a district court judge may consider "affidavits and other written evidence"). An assertion of fact in an opposition brief does not amount to written evidence.

Thus, irrespective of any conspiracy between Flanagan and Clark, no part of the conspiracy touched the District of Columbia. Consequently, Flanagan also is beyond this Court's reach.

### B. Should the Plaintiff's Complaint Be Dismissed or Transferred?

When a court lacks jurisdiction over civil action, "the court shall, if it is in the interest of justice, transfer such action … to any other such court in which the action or appeal could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631. Despite no party having raised the prospect of transfer, "[t]he law of this Circuit also holds that *sua sponte* transfers pursuant to 28 U.S.C. § 1631 are committed to the discretion of the District Court." *Jovanovic v. US-Algeria Bus. Council*, 561 F. Supp. 2d 103, 112 n.4 (D.D.C. 2008) (citing *Hill v. U.S. Air Force,* 795 F.2d 1067, 1070 (D.C. Cir. 1986)). Indeed, transfers, when possible, are preferred to outright dismissals. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–467 (1962) (transfer may be effected even absent personal jurisdiction over all parties in the transferor court, and in most

cases is preferable to dismissal if the defect can thereby be cured); *see also Sinclair v. Kleindienst*, 711 F.2d 291, 293–94 (D.C. Cir. 1983) (noting Supreme Court's favoring the transfer of cases when procedural obstacles, such as lack of personal jurisdiction, impede an expeditious and orderly adjudication on the merits).

Whether a transfer suits the interests of justice depends on whether the "claims would be time-barred upon refiling, whether transfer would prejudice the defendants' position on the merits, and whether transfer would save the plaintiff the time and expense of refiling in a new district." *Does 1-144 v. Chiquita Brands Int'l, Inc.*, 285 F. Supp. 3d 228, 235 (D.D.C. 2018). Here, the interests of justice militate for transferring this action to the United States District Court for the Eastern District of Virginia. First, as Clark and Southern Gun write, foreign patentees are statutorily subject to the jurisdiction of the Eastern District of Virginia. *See* Joint Reply at 3 n.2 (citing 35 U.S.C. § 293). Second, transferring this case to that Court would not prejudice the defendants' position on the merits as the alternative bases on which the defendants sought dismissal in this Court still may be presented. *See Sinclair*, 711 F.2d at 293 n.2 (transfer was in the interest of justice when "[t]he defendants would not be barred from raising any defense or submitting any motions in the transferee court which would have been proper in the transferor court"). Third, transferring the case, rather than making the plaintiff re-file, will spare the plaintiff, who currently is in bankruptcy proceedings, *see In re Paul Andrew Leitner-Wise*, No. 17-bk-266 (Bankr. D.D.C. 2017), unnecessary costs for refiling. Fourth, neither party will be substantially inconvenienced by the move from this Court to the Eastern District of Virginia, which is located just a few miles away.

For the foregoing reasons, transferring this action to the Eastern District of Virginia, which may exercise jurisdiction over each defendant, serves the interests of justice.[5]

## IV. CONCLUSION

For the reasons discussed above, Flanagan's Motion to Dismiss the Amended Complaint, ECF No. 18, and Clark & Southern Gun's Motion to Dismiss the Amended Complaint or, Alternatively, for Summary Judgment, ECF No. 19, are granted in part and denied in part. This case shall be transferred to the United States District Court for the Eastern District of Virginia, under 28 U.S.C. § 1631. An Order consistent with this Memorandum Opinion will be entered contemporaneously.

Date: December 26, 2018

_____
BERYL A. HOWELL
Chief Judge

---

[5] This Court takes no position on Clark and Southern Gun's request for attorneys' fees under 35 U.S.C. § 285. While that statute permits that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party" in a patent infringement action, no party has yet prevailed. The request for fees is premature.